SA:MTK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR THE PREMISES KNOWN AND DESCRIBED AS 729 LEXINGTON AVE, BROOKLYN, NEW YORK, 11221 AND CLOSED AND LOCKED CONTAINERS THEREIN | AFFIDAVIT IN SUPPORT OF WARRANT APPLICATION<br><br>17 M 394 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

   Jennifer Cardillo, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, deposes and states that:

   1. I have been a Special Agent with the ATF for approximately three years and am currently assigned to the ATF and New York City Police Department ("NYPD") Joint Robbery Task Force, where I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for violent crimes, including robberies, burglaries, extortion, and major theft. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities..

   2. I make this affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises identified in Attachment A hereto, which is known and described as follows: 729 LEXINGTON AVE, BROOKLYN, NEW YORK, 11221 (the "PREMISES"), and all locked and closed containers

found therein. Based on the facts set forth in this affidavit, there is probable cause to believe that the PREMISES contains evidence, fruits, and instrumentalities of access device fraud in violation of 18 U.S.C. § 1029, and unlawful use of a firearm, in violation of 18 U.S.C. § 924(c). I am submitting this affidavit in support of a warrant authorizing the search of the PREMISES for the items listed in Attachment B hereto, which constitute instrumentalities, fruits, and evidence of the foregoing offense. I am requesting authority to search the entirety of the PREMISES, including any locked or closed containers therein, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

3. I am the Special Agent with primary responsibility for the investigation of this case. This affidavit is based upon my personal knowledge, my review of evidence developed during the investigation; physical surveillance; my conversations with other law enforcement personnel and cooperating witnesses and cooperating sources; and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## THE PREMISES

4. I know from personal observation based on physical surveillance that the PREMISES is a two story red brick building with a cement staircase leading up to the front door. A black awning adorned with the numerals "729" and a large script "W" sits over the front door. The PREMISES is broken into two apartments which are separated by a

locked doors. A doorbell indicates that "Walker Alston" resides on the first floor of the PREMISES. This apartment, which this application seeks authorization to search, consists of the first floor and basement level. There is an attached backyard to the PREMISES, which this application also seeks authorization to search.

## FACTS ESTABLISHING PROBABLE CAUSE

5. The ATF has been investigating an armed robbery and shooting that took place on December 30, 2015 in Queens, New York. In connection with the investigation, the government has conducted multiple proffer sessions with a cooperating witness ("CW-1")[1] who has admitted, in substance and in part, to participating in multiple robberies with SHAQUEEL WALKER, also known as "Bear," as well as other co-conspirators (the "defendants").

6. CW-1 has informed the government that in the early morning hours of December 30, 2015, the defendants traveled in three vehicles to CityScapes nightclub located in Queens, New York.

7. Once there, the defendants were informed of the presence of professional basketball players in the club. The defendants waited in their parked vehicles until their intended victim ("Victim-1") left the club with a female companion and entered an Uber car service (the "Uber").

---

[1] CW-1 was arrested in early 2016 in connection with a Fall 2015 robbery outside of a club in Queens, New York. CW-1 has pleaded guilty to an information pursuant to cooperation agreement charging him with, among other things, racketeering, in violation of 18 U.S.C. § 1962(c). In addition, CW-1 has previously been convicted of Assault in the First Degree in violation of New York Penal Law § 120.10. CW-1 has admitted involvement in additional crimes including firearms trafficking and robbery. Law enforcement agents have found information provided by CW-1 to be reliable and corroborated by other evidence developed so far during the investigation.

8. The defendants followed the Uber and subsequently boxed in the vehicle forcing it to stop in the middle of the road. The defendants ordered the occupants, including the driver, out of the vehicle at gunpoint and demanded that Victim-1 and the driver hand over all their possessions. Victim-1 complied and provided the defendants with jewelry and cellphones. Notwithstanding, the defendants fired a gunshot at Victim-1 striking him in the leg. Following the shooting, the defendants fled the scene.

<u>The Arrest of Shaqueel Walker at the Premises</u>

9. On the morning of May 2, 2017, agents arrived at the PREMISES with an arrest warrant for the defendant SHAQUEEL WALKER.

10. During a previous meeting with government, CW-1 stated, in sum and substance, that WALKER stored guns in the backyard of the PREMISES.

11. After placing WALKER under arrest in his downstairs bedroom, agents conducted a protective sweep of the PREMISES. Sitting in plain view in WALKER's bedroom was a magnetic credit card reader, writer and encoder. Based on my training and experience, this device is often used to manufacture fraudulent credit cards. A stack of what appeared to be credit cards was next to the machine. Agents seized the machine and the associated credit cards.

12. During the course of the protective sweep, agents asked the defendant, in sum and substance, if there was anything in the PREMISES that they should know about. WALKER stated that there was a pistol in a "flight" bag located in his room. Agents located the bag, but did not find a pistol.

13. Based on this information, agents asked the defendant for consent to search the PREMISES. The defendant did not provide consent to search.

### REQUEST TO SEARCH THE PREMISES AND ITEMS TO BE SEIZED

10. Based on the foregoing, my involvement in this investigation, and my training and experience, it is my belief that there is probable cause that the PREMISES, including any closed or locked contained therein and the contents thereof, has been used to store instrumentalities, evidence, and fruits of violations 18 U.S.C. § 1029, access device fraud and 18 U.S.C. § 924(c), unlawful use of a firearm, and other items as listed in Attachment B.

### CONCLUSION

11. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that there are presently concealed in the PREMISES fruits, evidence, and instrumentalities of access device fraud in violation of 18 U.S.C. § 1029 and firearms trafficking, in violation of 18 U.S.C. § 924, which evidence consists of the items set forth in Attachment B hereto.

12. Therefore, I respectfully request that a search warrant be issued, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, authorizing the search of the PREMISES described above and in Attachment A, and to seize from the PREMISES the items described Attachment B. The search warrant, if issued, will be executed within 14

days of the date of the issuance of the warrant, as required by Fed. R. Crim. P. 41(e)(2)(A) and 41(e)(2)(B).

                              Respectfully submitted,

                              _s/A_____
                              Jennifer Cardillo
                              Special Agent
                              Bureau of Alcohol, Tobacco, Firearms and Explosives

Dated: May 2, 2017
       Brooklyn, New York

                              _____
                              HONORABLE RAMON E. REYES, JR.
                              United States Magistrate Judge
                              Eastern District of New York

## ATTACHMENT A

The PREMISES is a two story red brick building with a cement staircase leading up to the front door. A black awning adorned with the numerals "729" and a large script "W" sits over the front door. The PREMISES is broken into two apartments which are separated by a locked door. A doorbell indicates that "Walker Alston" resides on the first floor of the PREMISES. This apartment, which this warrant seeks authorization to search, consists of the first floor and basement levels. There is an attached backyard to the PREMISES, which this warrant also seeks authorization to search.

## **ATTACHMENT B**

The items to be searched and seized from the PREMISES known and described as, 729 LEXINGTON AVE, BROOKLYN, NEW YORK, 11221, all of which constitute instrumentalities, evidence, and fruits of violations of Title 18, United States Code, Section 1029:

i. Devices or equipment used to accept charges made by debit or credit cards;

ii. Cash registers or other equipment used to record transactions;

iii. All business records, including ledgers, journals, articles of incorporation, cash receipt journals, cash disbursement journals, sales journals, purchase journals, books and records of sales and purchases, memoranda, correspondence, mail records, invoices from suppliers, invoices to customers, records of payments to suppliers, receipts for transactions, lists of employees, payroll records, payroll stubs, petty cash payment records, summaries of financial records, address books, contact books, phone records, and methods of payment for costs and expenses;

iv. All contract estimates, bills, invoices, receipts, correspondence, inventories, calendars, journals, messages, memoranda, and other documents regarding customers, vendors and/or suppliers;

v. Telephone records, including bills, logs, message slips, rolodexes or other records of telephone numbers, answering machine cassettes or any stored message system;

vi. All telecommunications devices used to conduct the business;

vii. Fax machines, fax messages and fax records;

viii. Any money counting machinery;

ix. Appointment books;

x. All books and records, including accounts receivable, accounts payable, general journal and subsidiary ledgers, register receipts, copies of tax returns;

xi. All bank records, including bank statements, deposit slips, withdrawal slips, cancelled checks for all bank accounts, wire transfers, drafts, and money orders;

xii. All forms of the Internal Revenue Service or New York State Department of Taxation and Finance, which refer to or relate to payroll, earnings, or taxes;

xiii. All videos, disks, cassettes, tapes, or any other media capable of storing information obtained from visual or audio surveillance of the SUBJECT PREMISES;

xiv. All computers or storage media used as a means to commit the violations described above, including violations of Title 18 United States Code, Section 1029.

xv. All computer files containing any of the above-described information. The information to be seized includes information stored on computer hard drives, diskettes, tapes, or any other media capable of storing information in a form readable by a computer. This includes all copies of the information described above that may be maintained as archive or backup copies;

xvi. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such

as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

      k. records of or information about Internet Protocol addresses used by the COMPUTER;

      l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      m. contextual information necessary to understand the evidence described in this attachment.

      n. Routers, modems, and network equipment used to connect computers to the Internet.

xvii. All closed and/or locked containers containing the information requested in (i) – (xvi) herein.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

The items to be searched and seized from the PREMISES known and described as, 729 LEXINGTON AVE, BROOKLYN, NEW YORK, 11221, all of which constitute instrumentalities, evidence, and fruits of violations of Title 18, United States Code, Section 924(c):

   i. Firearms, ammunition and firearm accessories.